FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: May 14 2020

JAMES N. HATTEN, Clerk

By: s/B. Evans
      Deputy Clerk

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

Santwon Antonio Davis

**CRIMINAL COMPLAINT**

Case Number: 1:20-MJ-379

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.  On or about March 22, 2020 in Clayton County, in the Northern District of Georgia, defendant did knowingly devise and participate in a scheme to defraud someone by using false and fraudulent pretenses, representations, or promises about a material fact with the intent to defraud, transmitting and causing to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud,

in violation of Title 18, United States Code, Section 1343.

I further state that I am a Special Agent of the Federal Bureau of Investigation and that this complaint is based on the following facts:

**PLEASE SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof.    Yes

Signature of Complainant
Jae S. Park

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it.  Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

May 14, 2020                                                            at   Atlanta, Georgia
Date                                                                              City and State

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer                                   Signature of Judicial Officer

AUSA Sarah E. Klapman / 2020R00373

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jae S. Park, a Special Agent with the Federal Bureau of Investigation ("FBI"), United States Department of Justice, hereby depose and state under penalty of perjury that the following is true and correct to the best of my knowledge and belief.

## Introduction and Agent Experience

1. I submit this affidavit in support of an application for a criminal complaint of Santwon Antonio Davis (hereinafter "Davis"). There is probable cause to believe that on or about March 22, 2020, in the Northern District of Georgia, Davis did knowingly devise or participate in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises about a material fact with the intent to defraud, transmitting or causing to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

2. I have been employed as a Special Agent with the FBI since December 2010. I am currently assigned to the Complex Financial Crimes Squad of the FBI's Atlanta Field Division, which investigates violations of federal laws, including fraud and money laundering.

3. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

4. During my employment with the FBI, I have conducted investigations of criminal enterprises and individuals involved in violations of federal laws, including the sale and distribution of controlled substances, money laundering,

firearms trafficking, and human trafficking. Since being assigned to the Complex Financial Crimes Squad, I have investigated various types of frauds. During such investigations, I have conducted physical and electronic surveillance, reviewed bank and other financial records, and executed search and arrest warrants. I also have formal training in physical surveillance, money laundering techniques, confidential human source management, electronic surveillance, and other investigative techniques.

5. The facts set forth in this affidavit are based on my personal observations and knowledge, and may also be based on: (a) my training and experience, (b) information obtained from other individuals participating in the investigation, (c) reports and/or business records, (d) recorded conversations or text messages, and (e) communications with other individuals who have personal knowledge of the events and circumstances described herein. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included in this affidavit every detail of the investigation. Rather, I have set forth facts that I believe are sufficient to establish probable cause for the issuance of the requested search warrant. Unless specifically indicated otherwise, any conversations and statements described in this affidavit are related in substance and in part only.

## Probable Cause

6. The FBI is currently investigating a wire fraud scheme related to the COVID-19 pandemic.

7. In March 2020, Santwon Davis ("Davis") was employed by a national company with a facility located in the Atlanta Division of the Northern District of Georgia.[1]

8. On Thursday, March 12, 2020, and Friday, March 13, 2020, the Company held a mandatory training for all its employees to inform them of how to access the COVID-19 section of the Company's website. That section informed employees that if they tested positive for COVID-19, they would receive paid time off to quarantine. Davis was at work both of these days.

9. On Thursday, March 19, 2020, while at work, Davis received a telephone call at the Plant. Davis told his supervisors that the call was to notify him that his mother, with whom he resided, had been exposed to a COVID-19 positive person and that she had been told to self-quarantine. Davis's supervisor told him that he could continue working because this was a "low risk" exposure. However, he clocked out early because he said that he was worried about his mother.

10. On Friday, March 20, 2020, Davis's supervisor at the Company exchanged text messages with Davis. In these text messages, Davis informed his supervisor that Davis's mother developed COVID-19 symptoms overnight and that they were awaiting her COVID-19 test results. Again, Davis's supervisor told him that this was a "low risk" exposure and that he could report to work. However, Davis did not report to work.

---

[1] The victim company will be referred to as "the Company" to protect its identity. The Company's facility will be referred to as "the Plant."

11. On Saturday, March 21, 2020, Davis texted his supervisor to advise that Davis's mother had tested positive for COVID-19 and that Davis had a fever and was awaiting his own COVID-19 test results.

12. On Sunday, March 22, 2020, at approximately 2:30pm, Davis texted his supervisor and informed him that Davis had tested positive for COVID-19. Davis stated that he had discharge papers with quarantine instructions and that he would email them to the Company's Plant Manager.

13. On Sunday, March 22, 2020, at approximately 5:30pm, Davis spoke with the Plant Manager by telephone. Davis stated that he had returned to the clinic earlier that day to get his positive COVID-19 test results. The Plant Manager asked for a copy of the test results. The Plant Manager explained to Davis that if he had COVID-19, then the Company would be required to shut down the Plant for cleaning and to notify other employees with whom Davis had been in close contact because they would have to be quarantined also.

14. On Sunday, March 22, 2020, at approximately 5:35pm, the Plant Manager received an email (<u>an interstate wire communication</u> because the email traveled through, at a minimum, Iowa and Kansas before reaching the Company's email servers in Pennsylvania) from Davis, using the email address santwon5517@icloud.com, with an attached image of a "work/school excuse letter." The excuse letter, which appeared to be a computer-generated paper document, indicated that Davis was admitted to Wellstar Atlanta Medical Center Hospital South on March 20, 2020.

15. The excuse letter also indicated that Davis should quarantine for 14 days and avoid all contact with people if possible. The restrictions were similar to those

that have been discussed in the national media and in government publications for someone with a positive COVID-19 test. However, the letter did not indicate that Davis had been treated for or diagnosed with COVID-19. No test results were included in or attached to the email.

16. The investigation has revealed that the santwon5517@icloud.com account was initiated in May 2019 in Davis's name and with the same telephone number Davis used in his communications with the Company.

17. The investigation has further revealed that the subscriber of the santwon5517@icloud.com account was associated with the IP address 98.251.67.178 while logged on to the icloud.com domain at various times from March 19, 2020, until March 27, 2020. Further, this IP address was associated with a Comcast Internet account in the name of Antonio Davis with the service address at his residence in Morrow, Georgia, from November 9, 2019, until April 24, 2020.

18. The investigation has further revealed that the image attached to the email was taken by an Apple iPhone 6S on March 22, 2020. Davis's iCloud account is linked to an Apple iPhone 6S.

19. On Sunday, March 22, 2020, at approximately 5:50pm, the Company's Plant Manager shared the image of the excuse letter by electronic mail with members of the Company's core management team, one of whom was located in Pennsylvania and one of whom was located in Ohio.

20. The Company's Human Resources Manager reviewed the excuse letter and observed some indicia of fraud. For example, the letter stated that Davis was discharged on November 10, 2019, months before the purported admission date. The letter was unsigned. The letter did not appear to be on formal letterhead.

21. On Sunday, March 22, 2020, at approximately 8:46pm, the Plant Manager again asked Davis for a copy of his positive COVID-19 test results.

22. On Sunday, March 22, and Monday, March 23, 2020, the Company made inquiries to attempt to determine if the letter was legitimate. For example, the Company called the phone number listed on the excuse letter for the Wellstar facility. The outgoing voicemail for that number was a generic voicemail with a female voice, not specific to Wellstar or a recorded message. Using the Internet, the Company located a telephone number for the Wellstar Atlanta Medical Center Hospital South referenced in the letter, and after calling that number, a nurse who answered advised that the facility was not conducting COVID-19 tests.

23. The investigation has revealed that there is no record of Davis receiving medical treatment at the Wellstar Atlanta Medical Center Hospital South or any other Wellstar facility in March 2020.

24. On Monday, March 23, 2020, at approximately 4:00pm, the Company's Human Resources Manager in Atlanta spoke with Davis by telephone. On that call, Davis stated that he was having additional symptoms and was at the same Wellstar facility seeking treatment. The Human Resources Manager asked Davis why he had not sent the positive COVID-19 test results as requested by the Plant Manager. The Human Resources Manager also informed Davis of the actions that the Company would have to take as a result of the positive COVID-19 test results, specifically that the Company would be required to close the plant for cleaning and that the Company would have to quarantine other employees who had been in contact with Davis.

25. On Monday, March 23, 2020, at approximately 5:22pm, the Human Resources Manager texted Davis to confirm the contents of the earlier telephone conversation. Davis responded immediately via text, stating, "okay."

26. On Tuesday, March 24, 2020, the Company made repeated attempts to contact Davis by text, telephone, and through the emergency contact he had provided, but the Company received no answer.

27. On Wednesday, March 25, 2020, the Company again made repeated efforts to contact Davis. The Company informed Davis by voicemail and by text message that he had been placed on unpaid suspension status and that if he did not provide his test results by 3:00pm that day, his employment would be terminated. Davis has never responded to these attempts to contact him, and he has never provided the positive COVID-19 test results. He has since been terminated from employment with the Company.

28. In reliance on Davis's representations and in an attempt to protect its employees and the public from the serious public health crisis, the Company closed the Plant on Monday, March 23, 2020, for a thorough cleaning. The Company also paid the salaries of at least four employees who were required to quarantine themselves because they had been in close contact with Davis. This incident cost the Company in excess of $100,000.

## Conclusion

29. I submit that this affidavit establishes probable cause to charge Davis with wire fraud, in violation of 18 U.S.C. § 1343, and for his arrest.

**END OF AFFIDAVIT**